Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu

*Attorney for Plaintiff, Relator*

Fee Paid

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* [UNDER SEAL], <br><br> Plaintiff-Relator, <br><br> v. <br><br> [UNDER SEAL], <br><br> Defendant(s). | Case No.: CV25-1824-SB(MAAx) <br><br> Hon.: <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

**TO BE FILED UNDER SEAL**
**PURSUANT TO 31 U.S.C. § 3730(b)(2)**

SHN\890958.3

Heidi Rummel, Esq.
CA Bar No. 183331
699 Exposition Blvd.
Los Angeles, CA 90089
Telephone: (213) 740-2865
Facsimile: (213) 740-5502
hrummel@law.usc.edu
*Attorney for Plaintiff, Relator*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* AIDAN FORSYTH, <br><br> Plaintiff-Relator, <br><br> v. <br><br> PENTEL OF AMERICA LTD., <br><br> Defendant. | Case No.: _____ <br> Hon.: _____ <br><br> **QUI TAM COMPLAINT** <br><br> **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendant Pentel of America, Ltd. ("POA" or "Defendant") and alleges as follows:

## INTRODUCTION

1. This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the United States of America in connection with Defendant's materially false and fraudulent applications to the Government for a loan (and subsequent forgiveness thereof) under the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 et seq. (the "FCA").

2. Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendant submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

## SUMMARY OF ALLEGATIONS

3. The Paycheck Protection Program (PPP) was established to provide small businesses with the resources necessary to maintain their payroll and cover related overhead during the COVID-19 crisis. The SBA provided guidance for the implementation of the PPP, including size eligibility requirements.

4. A business concern was "small" for the purpose of qualifying for a PPP loan depending on its size when compared to a size standard, which was typically stated in terms of either receipts or employees. The loan applicant's designated representative was required to certify that the business had no more than 500 employees or, if it did have more than 500 employees, that it had a tangible net worth and historic net income that would satisfy the SBA's alternative size standard.

5. The second-draw PPP loan application required the borrower's authorized representative to state the total number of employees "(including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)," and to indicate if "the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business" and if so, to "list all such businesses and describe the relationship on a separate sheet[.]"

6. The SBA specified that, for purposes of this headcount limit, foreign companies with U.S. entities and/or operations were required to report all employees of all affiliates, both foreign and domestic.

7. At all times relevant to this action, POA's Japanese parent company Pentel Co. Ltd. ("PC"), along with approximately 24 wholly owned and/or controlled subsidiaries in every continent except Antarctica, constituted a multinational manufacturer of stationery with over 2,700 employees (approximately 135 in the United States) and approximately $336 million in annual revenue (2021).

8. POA, along with its parent and other affiliates, far exceeded the size and revenue limitations of businesses eligible to participate in SBA programs, including the PPP loan program. Nor did POA qualify under any SBA exceptions. Accordingly, POA was not eligible to receive a second-draw PPP loan or forgiveness thereof.

9. Nonetheless, on or about March 31, 2021, POA applied for and received a $2,00,000.00 second-draw loan, which was forgiven nearly in its entirety on or about June 14, 2022.

10. Upon information and belief, a POA representative prepared or caused to be prepared the loan application as its designated authorized representative.

11. The application required the borrower's designated representative to certify that POA was an eligible business under SBA rules, to disclose and list any affiliates, to disclose its total number of employees (including those of such affiliates), and to attest that the applicant and its affiliates employed no more than 300 people. The application also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate federal law.

12. However, in Defendant's application, POA's representative falsely and fraudulently certified that it was an eligible business under SBA rules, failed to disclose and list some or all of its affiliates, and the corporate group's total number of

employees. The representative also expressly acknowledged that this was a material question and that submitting a materially false application would violate federal law.

13. On or about March 31, 2021, in reliance on these false statements and certifications, a Pittsburgh-based lender extended a $2,000,000.00 PPP loan to Defendant.

14. On or about June 14, 2022, by submitting another false and fraudulent application, POA obtained forgiveness of its PPP loan, along with fees and accrued interest.

15. Relator files this qui tam lawsuit to enable the Government to recover from Defendant the SBA-guaranteed monies that were provided to Defendant as the result of its wrongdoing, and bank fees and costs paid by the Government. Relator further seeks to recover treble damages and/or penalties as provided by the FCA.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

16. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

17. In addition, the FCA specifically confers jurisdiction upon the United States District under 31 U.S.C. § 3732(a) because the Defendant maintained its principal place of business in this District, transacted business in the District, and because the PPP Loan applications were prepared in, executed in, and/or submitted to the lender from this District.

18. Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

19. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been *filed in camera* and will remain under seal for a period of at least 60 days and shall not be served on the Defendant until the Court so orders.

20. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint and such disclosure upon the Honorable Joseph T. McNally, Acting United States Attorney for the Central District of California, and upon the Honorable Pamela J. Bondi, Attorney General of the United States.

21. Relator is not aware that the allegations in this Complaint have been publicly disclosed. In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since he has voluntarily provided his information to the Government before filing this Complaint, and has knowledge, which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES/AFFILIATES

22. At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

23. At all times relevant to this action, Defendant Pentel of America, Ltd. ("POA") was a corporation originally incorporated in the State of Illinois on or about December 16, 1965. It registered to do business in the State of California on or about August 9, 1966. Its principal place of business and U.S. headquarters was located at 2715 Columbia St., Torrance, CA 90503.

24. Non-defendant Pentel Co. Ltd. ("PC") was a private company that was formed in Japan on or about March 1946. Its principal place of business address was listed as 7-2 Koami-cho, Nihonbashi, Chuo-ku, Tokyo 103-8538, Japan. POA is listed as an overseas sales office of PC. PC has 25 overseas offices including POA.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

25. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the

Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

26. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

27. The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

28. The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other

recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

29. The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

30. In this action, and under well-established precedent, the false and fraudulent nature of Defendant's conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

## The CARES Act Authorizes Paycheck Protection Loans

31. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

32. Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

33. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation,

rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

34. The SBA used size standards to determine if a business was a "small business concern" and therefore eligible to apply for an SBA-guaranteed PPP loan. To be deemed eligible, a business had to have fewer than 500 employees or meet the SBA industry size standard, if more than 500. 15 U.S.C. §§ 632, 636. The Small Business Jobs Act of 2010, Section 1116 established an alternative size standard of not more than $15 million in tangible net worth and of not more than $5 million in the average net income after federal income taxes (excluding any carry-over losses) of the applicant for the two full fiscal years before the date of the application.

35. The SBA also considered whether a business had "affiliates." *See id.* Subpart A, § 121.103. PPP applicants are subject to the affiliation rules of 13 CFR 121.301 because PPP is a part of SBA's Business Loan Programs. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20819 (April. 15, 2020).

36. The SBA defines "affiliation" for purposes of Business Loan Programs according to ownership. 13 C.F.R. 121.301. If an Applicant owns a majority of another business, or vice versa, then the Applicant and the business are affiliates. *See id.* Furthermore, if a business owner who owns a majority of the Applicant also owns a majority of another business which operates in the same 3-digit NAICS subsector as the Applicant, then the business owner, the business, and the Applicant are all affiliates. *See id.*

37. When the Applicant has no majority owners, if an owner of more than 20 percent of the Applicant is a business that operates in the same 3-digit NAICS subsector as the Applicant, then the Applicant and the owner are affiliates. *See id.* Also, when the Applicant has no majority owner, if an owner of more than 20 percent of the Applicant also owns a majority of another business that operates in the same 3-digit NAICS

subsector as the Applicant, then the Applicant and the owner's other business are affiliated. *See id.*

38. Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id.* §§ 121.103, 121.104 & 121.106. For purposes of the size standard, the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher. 13 C.F.R. §121.301.

39. Early in the Paycheck Protection Program, the SBA clarified that businesses comprising both U.S. and foreign entities "must count all of its employees and the employees of its U.S. and foreign affiliates absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6)." Paycheck Protection Program FAQs (updated May 5, 2020). *See also* 85 Fed. Reg. 30835, 30846 (May 21, 2020) ("SBA's affiliation rules provide that in determining an entity's number of employees, employees of the entity 'and all of its domestic and foreign affiliates' are included. As a result, in most cases, a borrower is considered together with its U.S. and foreign affiliates for purposes of determining eligibility for the PPP.").1

40. The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP

---

[1] Because the SBA published this clarification on May 5, 2020, it announced "as an exercise of enforcement discretion due to reasonable borrower confusion based on SBA guidance" that it would not find any borrower ineligible that applied for a PPP loan prior to that date based on its exclusion of non-U.S. employees from its reported headcount "if the borrower (together with its affiliate) had no more than 500 employees whose principal place of residence is in the United States." 85 Fed. Reg. at 30837.

program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

41.  Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner [2] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

42.  In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Economic Aid Act) was enacted, authorizing the SBA to guarantee "Paycheck Protection Program Second Draw Loans . . . under generally the same terms and conditions available under the Paycheck Protection Program[.]" See 86 Fed. Reg. 3712-3723 (Jan. 14, 2021).

43.  The second-draw PPP loan application (SBA Form 2483-SD) required the borrower's authorized representative to state the total number of employees "(including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)," and to indicate if "the Applicant or any owner of the Applicant is an owner of any other business, or have common management with, any other business" and if so, to "list all such businesses and describe the relationship on a separate sheet[.]"

44.  The borrower's authorized representative was required to certify, among other things, that:

- the Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act)

---

[2] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

and the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (the Paycheck Protection Program Rules);

- the Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees or (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location;

\* \* \*

- all loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures;

\* \* \*

- the Applicant has realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period. For loans greater than $150,000, Applicant has provided documentation to the lender substantiating the decline in gross receipts. For loans of $150,000 or less, Applicant will provide documentation substantiating the decline in gross receipts upon or before seeking loan forgiveness for the Second Draw Paycheck Protection Program Loan or upon SBA request.

45. Besides the total number of employees, the borrower's authorized representative was also required to certify, among other things, the business's average monthly payroll expenses. This information was used to calculate the amount of money

the business was eligible to be loaned. The applicant was also required to submit documentation showing payroll expenses, among other things.

46. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

47. Once a borrower submitted its PPP loan application to a lender, the participating lender processed the PPP loan application. If a PPP loan application was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

48. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The SBA made clear that "[u]nder no circumstances may PPP funds be used to support non-U.S. workers or operations." 85 Fed. Reg. at 30837.

49. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight (8) and twenty-five (24) weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

50. The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> [T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

# SPECIFIC FRAUD ALLEGATIONS

## POA and PC were Affiliates of Each Other

51. In 2018, PC identified POA as one of its sales offices in its Sustainability report. Furthermore, in 2022, PC again identified POA as one of its overseas sales offices.



45. Therefore, POA and PC are affiliates.

## POA, its Parent and their Affiliates in the Aggregate Were Too Large for POA to be Eligible for a Second-Draw PPP Loan

46. In the aggregate, POA, its parent PC and their affiliates employed far too large a headcount for POA to be eligible to receive a second-draw PPP loan.

47. POA publicly reported 156 active participants in its retirement plan at the beginning of calendar year 2020 and 140 active participants at year end 2020.

48. POA publicly reported 140 active participants in its retirement plan at the beginning of calendar year of 2021 and 130 active participants at year end 2021.

49. PC, POA's parent, publicly reported around 2,700 employees globally for FY2021.

## Despite being Ineligible under SBA Regulations, POA Applied for and Received a Second-Draw PPP Loan, which was Later Entirely Forgiven

50. On or about March 31, 2021, POA applied for a second-draw PPP Loan in the amount of $2,000,000, based on a reported headcount (including affiliates) of 148 employees.

51. Upon information and belief, an authorized representative of POA prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that POA was a small business concern eligible for participation in the PPP Loan Program, by failing to disclose its total number of employees, and failing to acknowledge that it had numerous foreign affiliates, by omitting information concerning those companies' common ownership.

52. Upon information and belief, the representative falsely and fraudulently indicated 148 as the "Number of Employees (including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)".

53. Upon information and belief, the representative falsely and fraudulently answered "No" to the question: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the

- 14 -
US ex rel. Forsyth v. Qui Tam Complaint (UNDER SEAL)
SHN\890958.3

representative falsely and fraudulently omitted to state that POA's foreign affiliated entities were affiliated businesses that shared common ownership.

54. Upon information and belief, the representative further falsely and fraudulently certified that POA "together with its affiliates (if applicable) . . . employ[ed] no more than 300 employees[.]"

55. The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

56. Upon information and belief, the representative prepared SBA Form 2483-SD using NAICS Code 339940, which did not provide for a "per-location" exception to the employee headcount limit or an employee size standard.

57. The authorized representative executed, dated, and submitted the Form 2483-SD to U.S. Bank National Association ("US Bank") a federally insured financial institution and SBA participating lender based in Cincinnati, Ohio.

58. On or about March 31, 2021, in reliance on POA's materially false and fraudulent representations and certifications in the loan application, US Bank issued PPP loan #3750888707 in the amount of $2,000,000 (the "POA Loan"). The SBA also paid US Bank a lender fee of approximately $20,000.

59. Upon information and belief, an authorized representative prepared or caused to be prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that POA had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the POA Loan.

60. On or about December 23, 2021, the POA Loan was forgiven in the amount of $2,023,945.21, causing the United States to reimburse US Bank for that amount (including interest), which (including the lender fee) cost the Government more than $2 million.

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANT'S CONDUCT

61. Upon information and belief, POA loan (including accrued interest) was forgiven nearly in full. These reimbursements, plus lender fees and costs cost the Government at least $2 million. Accordingly, Defendant's materially false statements have caused the Federal Government to be defrauded of taxpayer funds in the approximate amount of $2,023,945.21.

## CLAIMS FOR RELIEF

### COUNT I

False Claims Act:

Presenting or Causing to be Presented False and Fraudulent Claims

31 U.S.C. § 3729(a)(1)(A)

62. Relator repeats, realleges, and incorporates paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

64. As a result, thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

### COUNT II

False Claims Act:

Making or Using False

Records or Statement to Cause Claims to be Paid

31 U.S.C. § 3729(a)(1)(B)

65. Relator repeats, realleges, and incorporates paragraphs 1 through 61 of the Complaint as though fully set forth herein.

66. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendant – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

67. As a result, thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against Defendant, ordering:

A. That Defendant be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B. That judgment be entered in Relator's favor and against Defendant in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

C. That Defendant be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D. That judgment be granted for Relator against Defendant for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E. That Relator be granted such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

DATE:   February 28, 2025

                                           Respectfully submitted,

                                           By  /s/ Heidi Rummel
                                           Heidi Rummel, Esq.
                                           CA Bar No. 183331
                                           699 Exposition Blvd.
                                           Los Angeles, CA 90089
                                           Telephone: (213) 740-2865
                                           Facsimile: (213) 740-5502
                                           hrummel@law.usc.edu
                                           *Attorney for Relator*